In the Matter of LEO CURATOLO for Leave to File a Separation Agreement.

Supreme Court, Special Term, Kings County, November 1, 1966.

*Melvyn Grossman* for petitioner. *Morrow D. Mushkin* for respondent.

NATHAN R. SOBEL, J. The petitioner husband applies for leave of this court to file a separation agreement dated January 3, 1964 with the County Clerk. The respondent wife opposes the application.

The problem raised has been much discussed by the Bar. It involves basically an issue of legislative intent. (See Hendler, Matrimonial Practice in the N. Y. Supreme Court, Mr. Schaeffer's comments pp. 186–189; Foster & Freed, Divorce Reform Law, pp. 14–19.)

The husband desires to take future advantage of subdivision (6) of section 170 of the Divorce Reform Law (L. 1966, ch. 254, § 2). That subdivision is related to subdivision 5. Both provide for "new" grounds for divorce (Domestic Relation Law, § 170):

" (5) The husband and wife have lived apart pursuant to a decree of separation for a period of two years after the granting of such decree, and satisfactory proof has been submitted by the plaintiff that he or she has duly performed all the terms and conditions of such decree.

" (6) The husband and wife have lived separate and apart pursuant to a written agreement of separation, subscribed and acknowledged by the parties thereto in the form required to entitle a deed to be recorded, for a period of two years after the execution of such agreement and satisfactory proof has been submitted by the plaintiff that he or she has duly performed all the terms and conditions of such agreement. Such agreement shall be filed in the office of the clerk of the county wherein either party resides within thirty days after the execution thereof."

The effective dates of these subdivisions are fixed in the Divorce Reform Law as follows: " This act shall take effect September first, nineteen hundred sixty-seven provided that the two year period specified in subdivisions five and six * * * shall not be computed to include any period prior to September first, nineteen hundred sixty-six ". (L. 1966, ch. 254, § 15.)

Subdivisions (5) and (6) are the new " conversion " grounds for divorce. Under section 170 of the Domestic Relations Law a *decree* of separation (subd. [5]) or an *agreement* of separation (subd. [6]) may after two years be " converted " into grounds for divorce.

In only one respect is the legislative intent as expressed in the statutes clear: the two-year period commences to run on September 1, 1966. Whether the new provisions shall apply to past decrees or agreements, i.e., those entered or made prior to the effective date of the new law (April 27, 1966) was not made crystal clear as indeed it should have. This is defective bill drafting in a very important area of the law. Literally thousands of separation decrees and agreements are affected by these particular provisions.

Since the " conversion " from separation to divorce will almost be " automatic," the Legislature would have been entirely justified in requiring that only decrees or agreements *after* the date of the enactment of the new Divorce Reform Law could be utilized for " conversion " into divorce. A party who obtained a separation decree or parties who entered into separation agreements *prior* to the new law could not contemplate that the decree or agreement would in the future be convertible into grounds for divorce.

On the other hand it would be discriminatory, perhaps unconscionably so, permanently to deprive parties to " old " decrees and agreements of the benefits of the conversion privileges of the new law.

The Legislature faced with these alternatives made a choice. In my opinion, it chose to make the new law applicable to " old " decrees and agreements but provided that the two-year period was to commence on September 1, 1966 irrespective of the dates of such decrees or agreements. This purpose I believe is manifested in the legislative history of the proposed bills.

The Wilson-Sutton bills (Sen. Int. No. 627; Pr. Nos. 627, 2030, 3567, 4961 [1966 Sess.]) sponsored by the Joint Legislative Committee on Matrimonial and Family Laws, at all stages of its legislative history made no specific reference to " decrees " or " agreements." These simply provided that it was a new ground for divorce if " (e) The husband and wife voluntarily have lived apart for a continuous period of two or more years because of estrangement due to marital difficulties." But the addendum (effective date) clause in the first two prints (Sen. Pr. Nos. 627, 2030) provided that subdivision (e) was applicable only if " the parties commenced living apart on or after September first,

nineteen hundred sixty-six." Quite obviously "commenced living apart" did not include those who had "continued" to live apart before the proposed new law. But the last two prints (Sen. Pr. Nos. 3567, 4961) struck out the earlier provisions and substituted the phrase "shall not be computed to include any period prior to September first, nineteen hundred sixty-six." The latter bills manifested a clear legislative intent to apply the new provision to parties long living apart but to compute the two-year waiting period prospectively from September 1, 1966.

This precise terminology of the committee's bills was picked up and included in the "Leaders" bills, the final print of which became the Divorce Reform Law (see Sen. Int. No. 4504, Pr. Nos. 5084, 5376, 5474).

However, the first print of the "Leaders" bill (Sen. Pr. No. 5084) because of the vocal opposition to "consent" divorces, did not include mere "living apart" for two years as a ground for divorce. Instead that bill provided that the parties must have lived apart "pursuant to a decree of separation" for *five* years.

The "Leaders" however were quickly made aware by the Bar that such a provision was discriminatory against those couples who had separated by virtue of "agreements" without troubling to bring their matrimonial quarrels before a court. Indeed many *court* proceedings had been "settled" by the execution of an "agreement" in lieu of a decree. The second and subsequent prints of the "Leaders" bill added subdivision (6) to include also separation *agreements*. And it reduced the "waiting" period for both decrees and agreements to two years. However mere "living apart" without a court decree or a written agreement, the so-called "consent" divorce, was not made a ground for divorce as had the proposed committee's bill. But the addendum clause of the "Leaders" bill, as had the committee's final bills, provided that the two-year waiting period shall run prospectively from September 1, 1966.

Clearly the Legislature intended that the new law was to apply to "old" and "new" decrees and agreements; but the "old" must wait at least two years from September 1, 1966. Thus the parties to the instant agreement were included within the purview of the new law.

I turn to the provision for *filing of agreements*; decrees of course are automatically filed.

When the "Leaders" were induced by the importunities of the Bar to include separation *agreements* as well as decrees in the new law, concern was expressed by certain organizations that

agreements could be collusively arranged and dated back to eliminate the two-year waiting period. The second and subsequent prints of the "Leaders" bill endeavored to safeguard against this contingency. As finally adopted subdivision (6) provided that the agreements must be executed with all the solemnity of a deed to real property and filed within 30 days of execution. These provisions, at least in the judgment of the "Leaders" were believed necessary to avoid collusion with respect to future agreements. As drawn it was meaningless as to agreements executed prior to September 1, 1966. The parties to such "old" agreements were required by the *statute* to wait two years. No collusion could eliminate such waiting period. The *execution* and *filing* provisions of subdivision (6) in my opinion do not apply to separation agreements in fact entered into prior to September 1, 1966. As to these, it is pointless. It is applicable only to future agreements entered into *after* that date to assure that such agreements collusively are not pre-dated to eliminate . in whole or in part the two-year waiting period.

No decree (subd. [5]) or agreement (subd. [6]) may be converted into divorce prior to September 1, 1968. There is really no practical or legal necessity to file agreements dated prior to September 1, 1966 or at least prior to the effective date of the Divorce Reform Law, to wit April 27, 1966.

This decision has no value except as an expression of opinion by a Trial Justice. I therefore order the County Clerk to accept for filing the separation agreement entered into by the parties on January 3, 1964 in order to create a controversy which hopefully may be adjudicated by the appellate courts. Either such a decision or legislative action is essential to avoid a flood of litigation after September 1, 1968.